**In the Matter of Elinor CHANDLER, an Attorney-at-Law.**

**Misc. No. 5346.**

United States Court of Appeals, Ninth Circuit.

Sept. 28, 1971.

Robert L. Meyer, U. S. Atty., Los Angeles, Cal., William A. Kurlander, Santa Monica, Cal., for appellee.

Before KOELSCH, DUNIWAY and ELY, Circuit Judges.

OPINION AND ORDER

PER CURIAM:

On October 1, 1970, this court issued an order directing that Elinor Chandler, an attorney-at-law, show cause why she should not be suspended or disbarred from practice before this court under Rule 46(b), F.R.App.P., and why she should not be disciplined by this court

under Rule 46(c), F.R.App.P. In her response, Chandler made factual allegations raising conflicts with certain factual recitals in this court's order of October 1, 1970. This court ordered an oral hearing, and appointed the Honorable Martin Pence, United States District Judge for the District of Hawaii, as Master to conduct the hearing.

A hearing was held at Los Angeles on January 6, 1971. Chandler was represented by Attorney Frank Duncan. Attorney William Kurlander acted as *amicus curiae* to present the matter to the Master.

On February 1, 1971, the Master filed his Findings of Fact. On March 3, 1971, Chandler filed written exceptions to the findings, and asked leave to file a written memorandum in support of her exceptions after the transcript of the hearing was filed. The transcript of the hearing, and the exhibits received at the hearing were filed in this court thereafter, and on July 7, 1971, by order of this court, Chandler was permitted to file a written memorandum in support of her exceptions within 15 days. No such memorandum has been filed.

We have reviewed the transcript of the hearing and the exhibits. The findings of the Master are fully supported by the evidence. Each of Chandler's exceptions to them is overruled. We adopt the findings of the Master as the findings of this court. A copy of them is annexed to this opinion and order as an appendix.

The Master's findings support the following conclusions:

1. Chandler has been guilty of gross neglect of her duty as an attorney at law toward her client, Ysidro J. Garcia in appeal No. 25,961, which was pending in this court, and in which she was his attorney. Between August 25, 1969, when the appeal was taken, and May 21, 1970, she did nothing whatever to perfect the appeal or to protect Garcia from default. (Findings 1–19.) On May 21, 1970, the Clerk of this court notified her and Garcia that the appeal was subject to dismissal. She did nothing effective thereafter to protect Garcia's rights. (Findings 25–33.)

2. In seeking to obtain relief from default, Chandler deliberately and knowingly attempted to deceive this court as to Garcia's finances. (Findings 27–29, 31–32.)

3. When notified of the default, Chandler demanded and received from Garcia the sum of $50 to be used in trying to get relief from default on appeal and in paying the docket fee. She did not use any of it for either of those purposes. She acted with fraudulent intent in obtaining the money from Garcia. (Findings 26, 29, 37, 39.)

4. Chandler deliberately deceived Garcia into believing that she had the requisite legal knowledge properly to process his appeal and protect his rights. (Findings 35, 37, 39, 41.) In fact, she exhibited throughout gross incompetence. (Findings 10, 11, 12, 13, 14, 15, 18, 30, 31, 32, 34, 36, 40, 41.) She was more interested in his money than his rights. (Findings 26, 37.)

5. Chandler offered no real excuse for her behavior. The only possible excuse is incompetence as a lawyer, which is hardly acceptable from one who has been admitted to practice for 13 years, and does not in any event excuse fraud on her client or on this court.

Chandler's derelictions are inexcusable, and we would degrade our court if we failed to issue a disciplinary order. Chandler's potential clients, as well as this court, are entitled to protection against similar neglect of duty, incompetence and chicanery. On the other hand, because of Chandler's comparative inexperience in handling appeals in this court, and because, so far as appears from the record, this is her first serious offense, we have decided not to order the most severe penalty, disbarment. A substantial period of suspension should afford her ample opportunity to consider her misconduct and to equip herself to mend her ways. It is

Ordered that effective October 1, 1971, Elinor Chandler be and she is hereby sus-

pended from practicing law before this court for a period of three years, and that during that period her name shall be removed from the roster of attorneys admitted to practice before this court. It is further

Ordered that a copy of this opinion and order be transmitted to the Chief Judge of each of the District Courts in the Ninth Circuit and to the State Bar of California.

## APPENDIX

United States of America,

Appellee,

vs.

Ysidro J. Garcia,

Appellant.

In the Matter of

Elinor Chandler, an Attorney-at-law.

Misc. No. 5346

[February 1, 1971]

Before Honorable Martin Pence,* Chief Judge, United States District Court for the District of Hawaii, sitting as Master for the United States Court of Appeals for the Ninth Circuit

On October 1, 1970, the United States Court of Appeals for the Ninth Circuit issued an order to Elinor Chandler, an attorney-at-law, to show cause in writing why should she not be suspended or disbarred from practice before that court under Rule 46(b), F.R.App.P., and why she should not be disciplined by that court under Rule 46(c), F.R.App.P., for having been guilty of conduct unbecoming a member of the bar of that court for failure to comply with its rules and for failure to protect the interests of her client, Ysidro Joe Garcia.

As a result of the answer filed by Chandler, setting forth factual allegations which were in conflict with certain of the factual recitals in the court's order to show cause of October 1, an oral

hearing was ordered. That hearing was held before this judge, sitting as Master, on January 6, 1971, in the courtroom of the Court of Appeals in Los Angeles, California. William Kurlander, Esq., appeared as amicus to present the matter to this judge. Frank Duncan, Esq., appeared as attorney for Chandler. Chandler was called as an adverse witness and waived any rights she might have under the Fifth Amendment. Ysidro Joe Garcia and his wife, Eva Garcia, testified and were cross-examined by attorney Duncan. Mrs. Reba Swanson, business office supervisor and custodian of records for the Pacific Telephone Company in the Los Angeles area testified concerning the telephone numbers of Garcia. After testimony was concluded, the matter was argued by both counsel.

From the files and records in the case of United States v. Garcia, 9 Cir., 450 F.2d 287, now before the Court of Appeals, and the testimony and exhibits received during the hearing, this Master makes the following

## FINDINGS OF FACT

1. Chandler was licensed to practice in the Southern District of California (now Central District) in June 1958. She has considerable practice in criminal cases in the State courts. The Garcia case was, at most, the second criminal case that she had ever had in the Federal courts. She has filed other appeals in criminal cases in the State courts and stated that she was familiar with both Federal and State appellate procedure. She is admitted to practice before the Court of Appeals for the Ninth Circuit.

2. On May 7, 1969, Garcia retained Chandler to act as his attorney on criminal charges then pending against him in the United States District Court for the Central District of California. The agreed retainer fee was $500.[1] $100 was

---

* Honorable Martin Pence, United States District Judge, District of Hawaii, sitting by designation.

1. In his affidavit of August 19, 1970 (Ex. C-a), filed by his present attorney Carl

E. Stewart upon his motion before the Court of Appeals to recall the mandate, etc., Garcia stated that Chandler agreed to represent him "for a fee of $300." At the hearing before this Master it was stipulated by Kurlander, and testified to

paid on account of that fee on that date (Exs. 9A and 10). An additional $100 was paid Chandler on May 20, 1969 (Exs. 9B and 9C). A third payment of $100 was made on June 20, 1969 (Ex. 9D). No more payments were made on the agreed $500 fee until May 28, 1970, when the sum of $250 was paid by Garcia to Chandler (Ex. 4).[2]

3. On August 13, 1969, after a court trial, Garcia was found guilty of nine counts involving sales of heroin. The judgment of conviction was filed on August 14, 1969. On August 25, 1969, Chandler, who was Garcia's attorney at the time of trial, filed a notice of appeal for Garcia and paid to the clerk of the district court the $5 filing fee.

4. At all times from October 1964 to the date of the instant hearing, Mr. and Mrs. Garcia have lived at 1314 Westlake Avenue, Los Angeles 90006, and from the time of his conviction and at least until April 19, 1970, Chandler knew of this address of his at all relevant times. Garcia's telephone number was 384–8414. Between April 19 and 23, 1970, that telephone number was changed to 381–7838.[3] Each of these numbers was unlisted, but Chandler had knowledge of 384–8414 at least from the time of Garcia's conviction. From August 13, 1969, until May 23, 1970, neither Mr. nor Mrs. Garcia talked to or wrote to Chandler.[4]

5. Between August 13, 1969 and May 23, 1970, Garcia may have tried once or twice to phone Chandler at her home after 6 P.M. (That was the time he usually returned home from work.) During the same period, Mrs. Garcia may have tried to reach Chandler but, if so, was able to contact only Chandler's answering service or two secretaries (not employed by Chandler but rather by Duncan with whom she shared office space in downtown Los Angeles). (See Finding 23, *infra.*)

6. Chandler made no attempt to contact Garcia by phone until after May 21, 1970—when she received the letter of May 21, 1970 from the clerk of the Court of Appeals stating that the docket fee in the appeal had not been paid and the district court record had not been sent to the clerk of the Court of Appeals. It was then that she found that Garcia's "old" telephone number in her files had been disconnected.

7. Exhibits 1 and 2 purporting to be carbon copies of letters written by Chandler to Garcia on September 4 and October 9, 1969, which Chandler represented that she mailed to Garcia on or about the above dates, were never received by the Garcias. The authenticity of the letters themselves is verified only by the testimony of Chandler, since she typed them herself. The initials in the lower lefthand corner "ms" she stated stood for "myself." In the letter of October 9, the letters "sm" she stated were a typographical error.

8. No communication of Chandler reached the Garcias from August 13, 1969, to May 21, 1970.

9. The $5 fee for filing the notice of appeal was paid by Chandler out of the $300 retainer fee she had theretofore received.

by both Mr. and Mrs. Garcia, that the agreed fee was $500. This also is the only conclusion to be drawn from Chandler's receipt of May 7, 1969 (Ex. 9A).

2. This payment is evidenced by a receipt signed by Chandler on May 28, 1970 (Ex. 4). The receipt bears the word "Appealate", but is was agreed by the Garcias that only $50 of this amount was to be applied towards appeal.

3. Testimony of Reba Swanson.

4. In his affidavit of August 19, n. 1, Garcia stated that during this period he called "Mrs. Chandler from time to time to ask her how the appeal was going. She kept assuring me that everything was being taken care of and told me I was not to worry about anything." (Ex. C-a) Both his testimony and that of Mrs. Garcia at the instant hearing contradicted this. Their testimony was that neither, at any time, had ever been able to reach Mrs. Chandler through her answering service, or her secretaries, or at her home.

10. Prior to May 21, 1970, Chandler had not read Rules 10, 11 or 12 of the Federal Rules of Appellate Procedure, but "I understood I had 30 days extension" (after filing the notice of appeal). Until June 1, 1970, Chandler filed nothing—no request or papers of any sort whatsoever—to facilitate Garcia's appeal.

11. In August of 1969 Chandler believed that the "30-day extension" before ordering the transcript would permit her to establish the qualifications of Garcia necessary for him to proceed in forma pauperis. (See Finding 18, *infra.*)

12. At no time between August 1969 and May 1970 did Chandler believe it was "necessary" to proceed rapidly after filing notice of appeal, in order to protect the rights of her client, since she believed it was possible to reopen a default on appeal. She was, however, aware that a lawyer should proceed rapidly to forestall a default.

13. Chandler was not aware of the "simple statement" procedure provided in Rule 10. (She had never read the rule.)

14. Chandler's basis and reasoning for filing the notice of appeal were (a) Garcia did not want to go to prison; (b) Chandler was perfectly willing to file the notice for purpose of delay; (c) although Chandler told Garcia that his chances on appeal were very poor and that she did not recommend his appeal, nevertheless (d) since Garcia might have some grounds under *Leary*,[5] in order to protect whatever rights he might have, she paid the filing fee and filed notice of appeal on August 25, 1969.

15. Chandler keeps only a loose-leaf book on each criminal case she handles. She destroys all of these records just as soon as her client is convicted. She has no records of her own upon which to have started preparation of the appeal, even at the time she filed her notice of appeal.

16. Chandler never considered notifying Garcia that his appeal could go by default if no action was taken, and she never considered filing a motion to be relieved as his attorney.

17. Chandler affirmed that it was her practice when she doesn't hear from a defendant she is representing on appeal to let the appeal go by default. She never at any time considered sending Garcia a registered letter concerning his appeal, nor did she consider filing any motion that she be relieved from further representation of Garcia. Chandler did not feel any obligation to Garcia other than to attempt communication by letter or phone.

18. Chandler felt that it was necessary for Garcia to contact her personally before she could perfect his appeal so that she would know what he wanted to do; so that she could "get a forma pauperis for [Garcia]—and get the record on appeal at the cost of the Government, which would be my first step on proceeding on appeal after filing my notice." (But see Finding 28, *infra.*)

19. Although Chandler knew Garcia's address, she did not herself go there nor send anyone to contact him. When Chandler did not hear from Garcia, she thought that he might have jumped bail, but she felt under no obligation to inquire into his whereabouts or notify the court of her belief.

20. There are four people in the Garcia household—Mr. and Mrs. Garcia and two daughters, now 17 and 19 years old. Mrs. Garcia works but is home "by 2:30 P.M. latest."

---

5. *Leary v. United States*, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57, May 19, 1969. A question, at the trial, was whether the heroin sold by Garcia to the undercover agent had been imported. The agent testified that Garcia had told him it came from Mexico. Garcia took the stand and denied making the statement. Thus, an issue of fact was created which was resolved by the judgment of guilt made by the trial judge. Chandler in January 1971 still thought that the *Leary* doctrine applied to Garcia's heroin conviction. It was obvious that she had never heard of *Turner*. *Turner* v. *United States*, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610, January 20, 1970.

21. Neither Mr. nor Mrs. Garcia ever wrote to Chandler concerning the appeal between August 1969 and May 1970, nor did they visit her office during that period. Neither attempted to contact Duncan, Chandler's "associate", during this time because "he was not their lawyer."

22. Although Chandler in her request for relief from default, filed June 5, 1970, in this court, makes no mention of unanswered phone calls to the Garcia home, her statement therein concerning "Garcia's disconnected phone" makes suspect her claim that she made four to five phone calls to the Garcia residence, "most within the first months after his conviction."

23. During the entire period covered by the Garcia case, Chandler has never had a secretary. She occasionally used Duncan's secretary, Louise Prince, as well as an Edith Young, for typing, but she did most of the typing of all letters, pleadings, etc., herself.

24. The claim of Chandler, as well as the claim of Garcia, that each made repeated attempts to contact the other are rendered severally suspect by the contradictions to be found in the affidavits of each concerning those attempts, e. g., Chandler's inference that the reason she was unable to contact Garcia was because his phone was disconnected, and Garcia's claims in his affidavit of August 19, 1970 (Ex. C-a), that he had contacted Chandler and that she had told him everything was going alright. The Master therefore concludes that neither made any meaningful attempt to contact the other prior to the receipt by each of Clerk Luck's letter of May 21, 1970. From that moment on neither had any problem of contacting the other.

25. As indicated, on May 21, 1970, Clerk Luck sent the Court of Appeals' form letter #38 to both Chandler at her office and Garcia at his Westlake address, notifying both that the $25 docket fee was unpaid, the district court record had not been sent in, and his opening brief was overdue. Also, a statement was required, in writing, as to why those three actions had not been taken, and that if Garcia did not wish to have the appeal dismissed, the three acts must be done before May 29 (Ex. 3).

26. Although Chandler claims that in the May 23, 1970 telephone conversation with Garcia she told him to come in immediately, this Master finds Garcia's statement that he was then told by her to come in when he had $250 to be true, and that he came in about 6 P.M., after work, on May 28, 1970, in accordance with his agreement of May 23 that he would bring in the $250 on the day after pay day, pay day being Wednesday, May 27, 1970.

27. Chandler did not on May 28, 1970, inquire of Garcia as to where he got the $250 he paid her on that day, whether he was employed or whether his wife was employed, nor did she make any inquiry at all as to his financial situation.

28. Mrs. Garcia was steadily employed at least from August 19, 1969 to May 28, 1970. Garcia was steadily and gainfully employed during that same period by Lockheed Construction Co. as a tunnel laborer on the Feather River Water Project, and his *take-home* pay was between $218 to about $285 per week, depending upon overtime.

29. Between May 23, 1970, and May 28 when Garcia came to Chandler's office with $250, Chandler prepared no papers nor made any effort whatsoever to assist in the prosecution of Garcia's appeal even though *during that period* she believed she was under an obligation to have the moving papers filed before May 29, 1970.

30. Chandler prepared no papers on May 28 or May 29. She made no effort to meet the May 28 deadline in any respect. She did not pay the docket fee, even though she had then no knowledge of the "new" deadline of June 12, 1970 (when she paid the docket fee).[6]

31. On June 2, 1970, as reflected in the record of this court, there was re-

6. See Clerk Luck's letter of June 3, 1970, to Chandler.

ceived by this court in No. 25,961, from Chandler, a file of papers entitled "RE-QUEST FOR RELIEF FROM DE-FAULT—DECLARATION OF ATTOR-NEY THEREIN—DOCKET ONA [sic] APPEAL." The first paper was intended to be a request to the district court for the record on appeal, i. e., a transcript of the testimony and the Clerk's record. The next was a request to proceed in forma pauperis, wherein Chandler, declaring that she was attorney for Garcia, declared under penalty of perjury that Garcia, had come to her office on May 28, 1970, and informed her of his present employment and financial circumstances. She then continued that she was informed, and believed, that Garcia was "a construction working [sic]", having had and was still in "bad trouble for the last year in gaining employment and as a result his finances are very low", and she asked that he be allowed to proceed in forma pauperis. Her third item was a request for relief from default and declaration of attorney in support thereof. Therein she stated (under penalty of perjury) that she had been Garcia's attorney at trial and that after sentence she paid the $5 filing fee and entered a notice of appeal on his behalf, and advised Garcia to see her at her office. Thereafter she tried to find Garcia but was unsuccessful—his telephone was disconnected and her letters unanswered; that until she received Clerk Luck's notice on May 23, she had done nothing further on the appeal; that on that date the defendant telephoned her but the earliest meeting that could be arranged was May 28; that she had a heavy calendar on May 29 and could not finish the request for relief from default until over the weekend.

32. Chandler's affidavit in support of her prayer that Garcia be allowed to appeal in forma pauperis purportedly made upon her information and belief as to the poverty of Garcia makes certain that she had not read either Rule 24, F.R.App.P., or 28 U.S.C. § 1915, or any cases interpreting the same. Her "information and belief" was, in material matters, but a figment of her imagination. It was nevertheless calculated and intended to cause the Court of Appeals to believe her client, Garcia, was unemployed and in poverty.

33. This Court of Appeals has ruled that the moving papers belatedly filed by Chandler, intended to relieve Garcia from default and dismissal of appeal, were insufficient.

34. The notice from the Clerk of this court informing Chandler that Garcia's appeal had been dismissed was entered, and a copy mailed to her on June 16, 1970. It was not until July 1, 1970, that Chandler wrote Garcia a letter informing him that "The United States District [sic] Court of Appeal has dismissed your appeal" [7] and stated therein: "The remedy available to us at this time is by 2255 Government Codes." (Ex. 6) Neither at that time nor at any time prior to the instant hearing had Chandler ever read 28 U.S.C. § 2255. At no time prior to the hearing was she aware of the title number of the United States Code involved. As of the date of the instant hearing, she believed that the section "may be used in lieu of a defaulted or dismissed appeal." Chandler's only knowledge of § 2255 came from a former convicted client, Hayman, who was not a lawyer, who had told her several years before that he had secured relief under section 2255.

35. Chandler's letter of July 1, 1970 (Ex. 6) was calculated to deceive Garcia into believing that he could secure relief from default under a section of the Government Codes in lieu of normal appellate procedure.

36. At no time between August 13, 1969 and June 16, 1970, did Chandler or anyone else make arrangements with the

---

7. Although she now says she phoned Garcia upon receiving the notice of dismissal and told him so, this is belied by the wording of her July 1, 1970 letter as well as the testimony of Mr. and Mrs. Garcia.

court reporter to prepare the transcript on appeal as required by Rule 10(b), F.R.App.P.

37. Although her $250 receipt of May 28, 1970, was marked "Appealate", Chandler denied (a) that any portion of that fee was for her services in trying to get the matter of default set aside or (b) for the purpose of going ahead with Garcia's appeal if the default was set side. She denied asking Garcia for the $250, and said she told him she "would apply [$50] in trying to get this relief in default and paying the docket fee." She denied discussing with Garcia on May 28, 1970, the matter of going ahead with his appeal (even if the default were set aside). If her statements be accepted as true, then this Master can but find she took the $250 from Garcia with the intent, fraudulently to deceive him as to what he was getting for his $250. Your Master finds that Chandler's acts and words of May 28 and subsequently, were calculated to deceive and mislead Garcia into believing she would be able to process an appeal for him and that "everything would be alright."

38. Garcia, age 48, has a third grade education and is but semi literate. He recognizes well-known words, e. g., "State of California", and figures, e. g., "100", but cannot read many words, e. g., "hundred." He cannot read a newspaper. His wife, Mrs. Garcia, is more educated and is fully literate.[8]

39. At the conference of May 28, 1970, with Garcia and Mrs. Garcia present in Chandler's office, Chandler assured Garcia that his appeal would be properly processed and not dismissed. This statement was calculated and intended to lead Garcia to believe that he would still be able to remain out on bail pending the final disposition of his appeal. His arrest a few days after July 1st was a distinct shock and surprise to him and Mrs. Garcia.

40. Except as hereinabove stated, Chandler never filed any papers or took any action whatsoever in this court in the prosecution or presentation of Garcia's appeal. The papers which she did file were made without knowledge or appreciation of their legal insufficiency or effect. Chandler at no time took any meaningful steps to obtain any order of this court relieving Garcia from his long-standing default in the prosecution of his appeal.

41. From the time of Garcia's conviction in August 1969 until the instant hearing on January 6, 1971, Chandler not only had no knowledge of the requirements for prosecuting Garcia's appeal under the Federal Rules of Appellate Procedure, nor did she ever during that period even read the same, but her representations to Garcia from his conviction until his arrest in July 1970 were calculated and intended to deceive him into believing she had the requisite legal knowledge properly to process his appeal and protect his appellate rights.

Dated: January 27, 1971.

/s/ Martin Pence,
United States District Judge,
District of Hawaii,
Master

8. Garcia's affidavit of August 19, 1970 (Ex. C-a), filed by attorney Carl E. Stewart in connection with his motion for relief of Garcia, "to recall mandate", etc., filed in this court in No. 25,961 on August 27, 1970, was far from accurate in many particulars, all material ones having been corrected in the Master's Findings of Fact. The Master is satisfied that Garcia and Mrs. Garcia misled attorney Stewart into preparing the affidavit as worded. The Master does not feel it necessary at this time to determine exactly what happened in connection with the making of the affidavit.