**In the Matter of Samuel A. BITHONEY.**
**No. 71-1114 Original.**

United States Court of Appeals,
First Circuit.

Argued Sept. 11, 1973.
Decided Oct. 23, 1973.

Daniel S. Pearson, Bruce S. Rogow, Miami, Fla., for defendant-appellant.

J. Daniel Ennis, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before GEWIN, COLEMAN and MORGAN, Circuit Judges.

**320**

Lawrence P. Cohen, Asst. U. S. Atty., with whom James N. Gabriel, U. S. Atty., was on brief, for petitioner.

John P. White, Jr., Boston, Mass., with whom Crane, Inker & Oteri, Boston, Mass., was on brief, for respondent.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

This is an original proceeding to determine whether disciplinary action should be taken against Samuel A. Bithoney, a member of the bar of this court. On April 9, 1971 the United States Attorney for the District of Massachusetts filed a Petition for Disciplinary Action against respondent, and an Order to Show Cause was issued by this court on the same day. After respondent had filed an answer, these proceedings were stayed during the pendency of a criminal action instituted against respondent in the United States District Court for the Western District of New York on an unrelated matter. Upon final disposition of that criminal action, the stay in these proceedings was vacat-

ed, the Petition for Disciplinary Action having been amended to reflect respondent's conviction on a criminal charge, and a hearing was held before this court on September 11, 1973, at which hearing oral arguments were heard and sworn testimony was taken.

## I—FACTS

On November 25, 1969 respondent filed in this court Petitions for Review in the cases of Angelo Coviello v. INS (No. 7472), Luciano Pino and Rosa Pino v. INS (No. 7473) and Raffaele Iacadoro v. INS (No. 7474). In all of these immigration cases the effect of the filing was to cause an automatic stay of deportation under the provisions of 8 U.S.C. § 1105a(a)(3). In each case the government moved for summary judgment and the subsequent course of events is described in our Memorandum and Order entered on January 20, 1970:

"[The government's] motions to dismiss with accompanying memoranda were filed in the above three cases on December 23, 1969. No response having been received from counsel for the petitioners [Mr. Bithoney], the Clerk, at the court's instruction, notified counsel that the motions would be granted unless memorandum in opposition thereto was presented by 10:00 A.M. January 9, 1970. Instead of presenting a memorandum in opposition counsel filed, late, on January 12, motions for leave to file answers late. On said date counsel was again notified that there was required a legal memorandum showing legal cause, supported by authorities, why the motions to dismiss should not be allowed, said memorandum to be filed by January 19, by the Clerk. Nothing has been forthcoming.

"The motions to dismiss are allowed on the merits, and alternatively they are allowed for want of diligent prosecution by petitioners."

We then went on to warn:

"This court does not propose to have appeals taken simply for the purpose

of staying an enforcement of immigration orders, and when prosecution is not diligently pursued, the court presumes that this was the purpose."

On March 12, 1970 respondent filed a Petition for Review in the case of Rocco D'Allesio et al. v. INS (No. 7566). As in the three prior cases deportation was automatically stayed. Again the government's motion for summary judgment elicited no opposing memorandum of law and the petition was dismissed. The petition was found "totally lacking in merit".

On August 5, 1970 respondent filed two more petitions for review in immigration cases, causing stays in deportation. On this occasion a prehearing conference was held and at the specific request of the court Mr. Bithoney submitted a memorandum of law supporting his clients' position. The court concluded that the petitions were "patently frivolous" and granted summary judgment for the government on November 12, 1970. In the opinion in that case we made the following observation:

> "One final matter. In the case of petitioner Lucia D'Allesio lack of merit in the claim was fully and finally adjudicated by this court in an earlier proceeding. In addition, counsel has been expressly warned in the order in another proceeding of the seriousness of filing frivolous petitions under this statute. The ordinary frivolous case merely consumes time, and inconveniences the opposite party and the court. A frivolous petition to review a deportation order stays the entire deportation procedure and affords immediate relief regardless of the insubstantiality of the claim. In the light of this warning, and possibly even without such caution, considering the total clarity of the statute, it may be that counsel deliberately intended to abuse the process of this court in order to obtain an undeserved benefit for one or all of his clients. We refer this question to the U. S. Attorney to

institute disciplinary proceedings if he believes it appropriate." [Footnote omitted.] Panagopoulos v. Immigration and Naturalization Service, 434 F.2d 602, 603–604 (1st Cir. 1970).

On August 21, 1970 respondent filed one, and on August 26, 1970 two more, petitions for review in immigration cases. In all three cases this court granted summary judgment for the government and ordered that mandate issue immediately "because of the total frivolousness" of the petitions.

On January 8, 1973 respondent's conviction on two counts of aiding and abetting the making of a false acknowledgment (in violation of 18 U.S.C. §§ 2, 1015), a felony, was affirmed, United States v. Samuel A. Bithoney, 472 F.2d 16 (2d Cir. 1973), and certiorari was denied on June 11, 1973, 412 U.S. 938, 93 S.Ct. 2771, 37 L.Ed.2d 397.

## II—ISSUES PRESENTED

The government in its Petition for Disciplinary Action urges that respondent Samuel Bithoney has violated his oath as a member of this court's bar, taken pursuant to F.R.A.P. 46(a), in that he did not "demean [him]self . . . uprightly and according to law". The government also urges that respondent has been "guilty of conduct unbecoming a member of the bar of the court", which, under F.R.A.P. 46(b), is grounds for suspension or disbarment from the bar of a court of appeals, and under F.R.A.P. 46(c) is grounds for other "appropriate disciplinary action" against anyone who practices before the court. Two separate reasons are given by the government for a finding that respondent should be punished pursuant to F.R.A.P. 46. The first is his course of conduct in filing nine petitions for review in immigration cases in nine months, all of which were found to be frivolous, not diligently pursued, or both, and six of which were filed after this court's explicit warning in Angelo Coviello v. INS. The second reason is Mr. Bithoney's fel-

ony conviction for aiding and abetting the making of a false acknowledgment.

Respondent defends, first, on the grounds that his conduct in filing the immigration appeals cannot constitute a violation of the obligations of an attorney as defined in F.R.A.P. 46, even though all of them were found by the court to be frivolous, in view of an attorney's obligation to his clients to represent them "zealously". Second, respondent urges that even if his conduct violated Rule 46, that rule is so vague that its enforcement violates due process. Respondent also disputes the propriety of disbarring him because of his felony conviction, contending that his offense was such that disbarment is not warranted.

### III—DISCUSSION

■ We find first that respondent's behavior in filing the immigration appeals was improper and worthy of disciplinary action. Out of nine petitions for review not one was found to contain even a semblance of merit. And as we pointed out in *Panagopoulos, supra*, 434 F.2d at 603–604, such frivolous claims not only waste the time of the court and of the opposing party, but also, because of the operation of the immigration laws, confer an automatic and immediate benefit upon one who may not in the least deserve it. Furthermore, six of these cases were filed in the teeth of our warning in *Coviello*.

■ Respondent reminds us of the injunction of Canon EC 7–1, of the Code of Professional Responsibility, that a lawyer must represent the interests of his client "zealously". The mere finding that a position advanced was frivolous must not be cause for discipline of the attorney because of the danger that such action might inhibit the bar from the most vigorous advocacy of clients' positions and thus restrict meaningful access to the court. Furthermore, an attorney would face an intolerable dilemma when the needs or instructions of his client would force him to argue a position which he personally may feel to lack merit, and which could lead to punitive action against him by the court.

Sensitivity to these considerations requires that we indulge every presumption in favor of the attorney who presents or defends a position which is found to lack support. We must insure that there is breathing room for the fullest possible exercise of the advocacy function. But there must be limits. Canon EC 7–1 states that the duty of a lawyer is to represent his client zealously, but only "within the bounds of the law". The processes of this court are made available for the general good; to the extent that they are abused they become less available to those genuinely in need of them.[1] Such abuse also lowers public esteem for the judicial system and, particularly in the situation presented here, can unjustifiably result in unmerited benefit.

With these considerations in mind, we find that respondent has abused the processes of this court by lodging appeals of patent frivolity, under the circumstances shown above. Whether we question his good faith is not determinative;

1. As pointed out by the court in Gullo v. Hirst, 332 F.2d 178, 179 (4th Cir. 1964):
"While we must be careful to assure that the courts are always open to complaining parties, we have an equal obligation to see that its processes are not abused by harassing, or by recklessly invoking court action in frivolous causes or by foot dragging and delaying in order to deny or postpone the enjoyment of unquestioned rights. Lawyers have an obligation as officers of the court not to indulge in any of these practices. Vexatious litigation and the law's delays have brought the courts in low repute in many instances, and when the responsibility can be fixed, remedial action should be taken.
"We remand this case to the district court with instructions that it tax the plaintiff with reasonable counsel fees for the defendants' attorneys and that it visit a proper sanction upon the plaintiff's counsel."

his course of action was so clearly and flagrantly in violation of the proper behavior of a member of the bar of this court that it represents at a minimum such gross negligence that punitive action is indicated.

Even at this point we might hesitate to take disciplinary action, sensitive to even the slightest possibility of casting an inhibitory shadow upon the ardor of those who practice before us. But even more serious, in our view, was respondent's complete failure to diligently pursue prosecution of four of the appeals. Such behavior represents a breach of duty not only to the court, but also to the client, who justifiably expects his counsel to present his claims with utmost vigor, let alone with sufficient promptitude to avoid loss of valuable rights through default. The record indicates that the court indulged Mr. Bithoney every reasonable opportunity to fulfill the obligations of one who appeals to the court, but that respondent utterly failed to do so.[2] Such action—or, precisely, inaction—removes all doubt as to the propriety of imposing discipline in his case. We fail to see how such inaction can be protected by the need to "zealously" defend a client's interest. Rather we see this as a default in his duty to his clients, an additional reason for punishment, rather than a defense.

At the hearing respondent testified to a physical impairment affecting his eyesight during the period in question, requiring him to utilize his son, who is not a member of the bar, to aid him in his legal work. While we have considerable sympathy for respondent's hardship, we have little sympathy for his use of this hardship as a defense. If Mr. Bithoney was so ill as to preclude effective legal representation then his failure to take meaningful steps to have such representation provided by alternate means amounts to a serious breach of his obligations to his clients,[3] as well as to the court.

■ An interesting issue is raised by respondent's claim that F.R.A.P. 46 is so vague that its enforcement against him would be a denial of due process.[4] There is no question but that attorney discipline proceedings are subject to due process scrutiny. In re Ruffalo, 390 U. S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968). Indeed, in view of the gravity of the punishment which may be meted out pursuant to F.R.A.P. 46, which includes stiff fines,[5] or even suspension or disbarment [6] with all of the consequential damage which that entails, the test which must be employed as to the constitutionality of the disciplinary machinery to be used must be a very severe one. There has been considerable discussion both within and without the ranks of the legal profession of the need for tightened disciplinary rules and more vigilant enforcement. While we support

---

2. Respondent's efforts on behalf of his clients in the five other cases can at best be regarded as minimal. In two of these cases a memorandum of law opposing summary judgment was filed, but only at the express instruction of the court. In the last three appeals briefs were filed which can only be described as feeble efforts. In two of them the sole ground for relief presented was the assertion that deportation would cause hardship because of "Communistic influence" in the areas where the individuals were to be sent. The areas were Greece and Guatamala.

3. Respondent testified that he informed his clients of his physical problem but that they declined to seek new counsel. We cannot but be skeptical of the ability of those who have only resided in this country a short time to make an effective choice in this matter. Further, there comes a point when an attorney can no longer rely on the failure of his clients to seek alternative counsel, and must withdraw from active representation until physically able to fulfill his obligations to court and client.

4. We understand respondent does not allege that he was denied notice of the particular charges lodged against him or that he was not afforded an adequate opportunity to be heard.

5. *See, e. g.,* In re Winsberg, 446 F.2d 641 (9th Cir. 1971).

6. *See, e. g.,* In re Chandler, 450 F.2d 813 (9th Cir. 1971).

such efforts we do not think that there is any inconsistency between that laudable goal and the equally important goal of providing the strictest possible due process standards for the procedures used to carry out necessary bar discipline.

The question presented is whether the terms used in F.R.A.P. 46, i. e., "demean [him]self . . . uprightly and according to law", and "conduct unbecoming a member of the bar", are "in terms so vague that men of common intelligence must necessarily guess at its meaning", Connally v. General Construction Co., 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926), and thus deny due process when used as the basis for a disciplinary proceeding.

In the abstract, respondent may have a colorable claim that the terminology of F.R.A.P. 46 is so indefinite as not to afford sufficient warning of the behavior which is proscribed. But we are convinced that when placed in context, as part of a rule directed to a discrete professional group, the terms take on definiteness and clarity. The legal profession has developed over a considerable period of time a complex code of behavior and it is to that code that such words as "conduct unbecoming a member of the bar" refer. In addition, the American Bar Association has promulgated a Code of Professional Responsibility which embodies in considerable detail the standards of behavior currently expected of members of the bar.[7] Disciplinary Rule 7–102(A)(2) of the Code provides that:

"(A) In his representation of a client, a lawyer shall not:

\*   \*   \*   \*   \*   \*

"(2) Knowingly advance a claim or defense that is unwarranted under existing law, except that he may advance such claim or defense, if it can be supported by good faith argument for an extension, modification, or reversal of existing law."

Under these circumstances a member of the bar, like respondent, cannot complain that there is not at least a core area of clearly prohibited conduct which the words "uprightly and according to law" and "conduct unbecoming a member of the bar" mean to him.[8]

Whatever ambiguity may remain in the terms of F.R.A.P. 46 after application of the customs and commonly accepted usages of the legal profession, respondent is not in a position to complain of them. In our Memorandum and Order disposing of the petition which he had filed in the *Coviello* case, we directly and specifically warned respondent that continued abuse of our process by the filing of immigration appeals solely for the purpose of achieving delay in deportation orders would constitute improper conduct on his part. In continuing this course of conduct by filing six more petitions for review respondent ran afoul not only of the general proscriptions of F.R.A.P. 46 but of our warning to him. Mr. Bithoney did not have to guess as to the conduct which would lead to sanctions against him; that unfairness which is the essence of the vagueness doctrine just did not occur in his case.[9]

---

7. We refer to the Code only as an illustration of the lore of the profession, which we assume is familiar or should be to all attorneys. *See also* Canon 15 of the older Canons of Professional Ethics.

8. The fact that marginal cases may be put does not indicate that the rule is unconstitutionally vague as regards situations clearly within its purview. *See* United States v. Harriss, 347 U.S. 612, 618, 74 S.Ct. 808, 98 L.Ed. 989 (1954).

9. We also note that there is not involved here an infringement upon First Amendment rights, or a chilling effect upon such rights, such as prompted a considerably stricter application of the vagueness test in such cases as Coates v. City of Cincinnati, 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971) and Baggett v. Bullitt, 377 U.S. 360, 84 S. Ct. 1316, 12 L.Ed.2d 377 (1964).

Therefore, we conclude that there is no merit to the defense of denial of due process due to the alleged vagueness of F.R.A.P. 46.

Mr. Bithoney's criminal conviction raises a separate issue of some complexity which we do not need to consider. The punitive action which we take is fully warranted by and based on the behavior dealt with above. It seems to us sufficient under the circumstances. We thus take no punitive action with respect to the prior criminal conviction. We make it clear, however, that the conviction of any member of this bar is a matter of grave concern and will lead to disciplinary action should the nature and seriousness of the offense warrant.

### IV—CONCLUSION

For the reasons which we have explained above, we find that respondent has engaged in behavior which requires this court to take punitive action against him. Specifically, we find that the filing of nine petitions for review in immigration cases, some of which were not diligently pursued and none of which raised any substantial issue on review, which petitions caused automatic stays in deportation despite their lack of merit, and six of which petitions were filed after specific warning concerning the impropriety of such conduct, constitutes behavior "unbecoming a member of the bar of the court". Under the authority of F.R.A.P. 46 we have the power, and we feel, the duty, to impose appropriate disciplinary measures.

Respondent has not, for the past three years, used the processes of this court. Under the circumstances we suspend him as a member of the bar of this court until March 1, 1974 and impose a fine of $500, to be paid to the Clerk of the United States Court of Appeals for the First Circuit, who shall deposit the money received into the Treasury of the United States.