**UNITED STATES of America, Plaintiff,**

**v.**

**John Carl WEBBER, Jr., Defendant.**

**No. Civ. 97–636–FR.**
**No. CR 88–283–FR.**

United States District Court,
D. Oregon.

Oct. 7, 1997.

Kristine Olson, U. S. Atty., Baron C. Sheldahl, Asst. U. S. Atty., Portland, OR, for Plaintiff.

Daniel C. Lorenz, Gayle Kvernland, Portland, OR, for Defendant.

## OPINION

FRYE, District Judge.

The matter before the court is the motion of the defendant, John Carl Webber, Jr., to vacate, set aside or correct sentence and conviction pursuant to 28 U.S.C. § 2255(# 57).

## BACKGROUND

On September 6, 1988, agents of the Federal Bureau of Investigation (the FBI) commenced a court ordered wiretap of Webber's telephone. As a result of the information gained from the wiretap, the informants and surveillance, the FBI obtained a warrant for the search of Webber's person, vehicle and residence.

On October 11, 1988, Webber was arrested by FBI agents after the agents had executed the warrant for the search of his vehicle and his residence on a 1200–acre ranch located near the town of Mitchell in eastern Oregon. Agents seized $22,000 in cash, more than five and one half kilograms of 100% pure cocaine, and drug records from Webber's vehicle. Webber and his wife, Jacqueline Webber, were arrested at the time the search warrant was executed.

Following her arrest, Jacqueline Webber agreed to cooperate with FBI agents. Jacqueline Webber told FBI agents that she believed that John Webber kept cocaine in the crawl space under a cabin on their ranch property.

FBI agents then obtained and executed another warrant for the search of a cabin located on Webber's 1200–acre ranch. An additional eleven kilograms of 100% pure cocaine were seized from the crawl space under that cabin.

On November 8, 1988, a federal grand jury returned a one-count indictment charging Webber with the crime of possession with the intent to distribute more than five kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A).

Webber retained Attorney Buford B. Wiley to represent him.

Webber entered a plea of not guilty. After filing numerous pretrial motions, Webber withdrew his plea of not guilty to the charge alleged in the indictment and entered a plea of guilty pursuant to a plea agreement in which the government agreed to recommend that he receive credit for his acceptance of responsibility and to recommend a sentence at the low end of the sentencing guideline range.

The Parole and Probation officer who prepared the presentence report concluded that Webber's total offense level was 34, and his criminal history was Category I, resulting in a guideline range of 151 to 180 months.

Webber filed an objection to the conclusion of the Parole and Probation officer in the presentence report that he was a supervisor in the criminal activity under U.S.S.G. § 3B1.1(c) and, as such, should receive a two-level increase for his role in the offense.

On May 22, 1989, the court held a hearing regarding Webber's objections to the presentence report. Following a review of the evidence, the court concluded that Webber was a supervisor in the criminal activity and that the writer of the presentence report had accurately concluded that Webber's total offense level was 34, and his criminal history category was Category I, resulting in a guideline range of 151 to 180 months. The court sentenced Webber to 151 months in prison. Pursuant to Rule 32(c)(3)(D) of the Federal Rules of Criminal Procedure, the court made written findings of facts regarding the objections of Webber to the information contained in the presentence report.

On June 12, 1989, Webber filed a timely notice of appeal.

On February 6, 1991, the United States Court of Appeals for the Ninth Circuit affirmed the conviction of Webber and the sentence imposed by this court in a memorandum opinion. The Court of Appeals concluded that this court had not clearly erred by adding a two-point upward adjustment to the base offense level because Webber had played an aggravating role in the offense.

## CONTENTIONS OF THE PARTIES

Webber contends that the assistance he received from his counsel was ineffective and in violation of his Sixth Amendment rights in that 1) his attorney failed to file pretrial motions to suppress evidence; and 2) at the time of sentencing, his attorney had not challenged the base offense level calculated under the sentencing guidelines. Webber contends that his attorney was inexperienced, negligently unprepared, or otherwise distracted by personal or legal problems of his

own. Webber contends that he is now aware that during the time he was represented by his attorney, the attorney was arrested in the State of California and subsequently voluntarily resigned from practicing law in the State of California.

The government contends that Webber was provided with the effective assistance of counsel at all stages of his prosecution. The government contends that Webber cannot show that he would have prevailed on his pretrial motion to suppress had his counsel filed such a motion. The government further contends that Webber cannot show that the base offense level was wrong or that it would have been different had his counsel challenged the relevant conduct computation. The government contends that Webber stated on the record at the time he entered his plea of guilty that he was satisfied with his lawyer's advice and that he knew the maximum penalty for the offense to which he was pleading guilty.

## LEGAL STANDARDS

28 U.S.C. § 2255 provides, in part:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

Under section 2255, "a district court must grant a hearing to determine the validity of a petition brought under that section '[u]nless the motions and the files and records of the case *conclusively show* that the prisoner is entitled to no relief.'" *United States v. Blaylock,* 20 F.3d 1458, 1465 (9th Cir.1994) (quoting 28 U.S.C. § 2255) (emphasis in the original). The court may deny a hearing if the movant's allegations, viewed against the record, fail to state a claim for relief or "are so palpably incredible or patently frivolous as to warrant summary dismissal." *United States v. McMullen,* 98 F.3d 1155, 1159 (9th Cir.1996) (internal quotation omitted), *cert. denied,* — U.S. —, 117 S.Ct. 2444, 138 L.Ed.2d 203 (1997). To earn the right to a hearing, therefore, the movant must make specific factual allegations which, if true, would entitle him to relief. *Id.* Mere conclusory statements in a section 2255 motion are insufficient to require a hearing. *United States v. Hearst,* 638 F.2d 1190, 1194 (9th Cir.1980), *cert. denied,* 451 U.S. 938, 101 S.Ct. 2018, 68 L.Ed.2d 325 (1981).

To prevail on a claim of the ineffective assistance of counsel, a petitioner must show both (1) that the attorney's performance fell below an objective standard of reasonableness; and (2) that the performance prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 687, 688, 104 S.Ct. 2052, 2064, 2064–65, 80 L.Ed.2d 674 (1984). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 689, 104 S.Ct. at 2065. To establish the second prong of the *Strickland* test, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068.

## ANALYSIS AND RULING

### 1. *Pretrial Motions*

█ Webber alleges that his trial lawyer was ineffective for failing to move to suppress evidence of the 11 kilograms of cocaine seized from underneath the cabin. Webber contends that the FBI agents searched the cabin and seized the 11 kilograms of cocaine prior to obtaining a warrant for the search of the cabin.

The warrant for the search of the cabin was obtained at 4:45 p.m. on October 11, 1988. The documents from the search show that FBI Special Agent Samuel McPheeters acquired the cocaine from the crawl space under the cabin on the Webber ranch, ⅔ of a mile from the Webber house, at 6:00 p.m. on October 11, 1988. Affidavit of FBI Special Agent Ronald D. Stuart (attached as Exhibit D to Government's Motion to Expand the Record).

Webber states in his affidavit:

4. At the time of the execution of the search warrant in this case, my brother, Jim, lived on the ranch property and was physically present. After the initial search and seizure of the property, my brother was allowed to return to his house, which is on a high point on the property, looking back towards both my house and the cabin at which the 11 kilograms of cocaine were found. My brother was prepared at that time to testify, and continues to be prepared to testify, that prior to the arrival of the second search warrant later that day, officers were already present at the cabin standing on the porch and milling around the cabin, with the front cabin door open. Despite this information, as well as information from other witnesses, no serious discussions were held between Mr. Wiley and myself regarding a possible motion to suppress or the merits and likely outcomes [sic] of that motion.

Affidavit of Defendant, pp. 2–3.

Each of the search warrants obtained from the Honorable James A. Redden were supported by affidavits showing probable cause for the searches. On October 11, 1988, at daybreak, when FBI agents stopped the vehicle driven by Webber and searched him and his vehicle, they had in their possession warrants for the search of Webber and his vehicle as well as his residence. The FBI agents then searched Webber's residence, and after obtaining information from Jacqueline Webber, obtained a warrant for the search of the cabin. The purported testimony of Webber's brother that "prior to the arrival of the second search warrant later that day, officers were already present at the cabin standing on the porch and milling around the cabin, with the front cabin door open" does not establish that FBI agents searched the cabin and seized the 11 kilograms of cocaine prior to obtaining the warrant to search the cabin.

The court concludes that Webber has not shown that the failure of his counsel to file a motion to suppress fell below an objective standard of reasonableness and that he would have prevailed on a motion to suppress the 11 kilograms of cocaine seized from the cabin.

*2. Assistance of Counsel at Sentencing*

Webber states that "[h]ad I understood at the time of entry of plea that I was facing substantially more than a 10–year sentence, I do not believe that I would have entered my plea, and certainly not without further negotiation." Affidavit of Defendant, p. 2. Webber contends that he would not have pled guilty if he had been aware that he was going to be sentenced to more than ten years or to be held responsible for the more than the five and one half kilograms that he admitted to at the time he entered his plea of guilty.

In the presentence report, a base offense level of 34 is calculated pursuant to U.S.S.G. § 2D1.1(a)(3) based upon the 16.43 kilograms of cocaine seized from the vehicle and the cabin. Both seizures were made pursuant to court ordered search warrants. The conclusion of the writer of the presentence report and the court that this cocaine belonged to Webber is supported by the record. The 16.43 kilograms of cocaine was properly included as relevant conduct in Webber's guideline calculation.

Webber has not shown any manner in which his attorney's performance fell below an objective standard of reasonableness or prejudiced his defense. This court has examined the record and the claims made by Webber and finds that he has not shown in any way how the actions of his attorney were unprofessional. Furthermore, he has not shown how different acts on the part of his attorney could have resulted in a different outcome. There is no evidence that the personal problems of Webber's counsel, if any, appear to have affected these proceedings.

Webber has failed to make specific factual allegations which, if true, would entitle him to relief. Accordingly, the court will not conduct an evidentiary hearing.

## CONCLUSION

The motion of the defendant, John Carl Webber, Jr., for modification of sentence pursuant to 28 U.S.C. § 2255(# 57) is denied.