UNITED STATES of America,
Plaintiff–Appellee,

v.

SPAWR OPTICAL RESEARCH, INC.,
Walter J. Spawr, and Frances Spawr,
Defendants–Appellants.

No. 87–6272.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 7, 1988.

Decided Dec. 29, 1988.

Scott C. Witney, Washington, D.C., for defendants-appellants.

William Fahey, Asst. U.S. Atty., Los Angeles, Cal., Ronald Roos, Washington, D.C., for plaintiff-appellee.

Before PREGERSON, WIGGINS and BRUNETTI, Circuit Judges.

BRUNETTI, Circuit Judge:

## BACKGROUND

In the early 1970's, Walter Spawr, an optics expert, invented a superior process for polishing laser mirrors. By 1975, Walter and his wife Frances, through their corporation, Spawr Optical Research, Inc. (collectively "the Spawrs"), were marketing their laser mirrors nationally and exploring international markets.

In January 1976, the Spawrs accepted an order from a purchasing agency of the Soviet Government. They began filling the order in June of that year by delivering some of the mirrors to their agent in this country, who then departed for West Germany. The Spawrs shipped the balance of the order to the agent in West Germany in July. The agent then forwarded the entire order to Moscow. The Spawrs never attempted to obtain an export license for this shipment of mirrors.

In April 1976, the Spawrs received a second Soviet order. Walter decided to seek an export license for a portion of this second order. He filed a license application with the Commerce Department in May, identifying his agent in West Germany as the end-user of the mirrors. On October 7, 1976, the Secretary of Commerce ("Secretary") denied the application, having determined that the Spawrs' mirrors were included on the Commodity Control List ("CCL")[1], and that they had "significant strategic applications" posing a potential threat to national security.

In November, because of their inability to obtain an export license, the Spawrs canceled the second Soviet order. However, in February 1977, they shipped mirrors to a freight forwarder in Switzerland. Their agent then relabeled the boxes con-

---

1. The CCL, established by the Secretary pursuant to 50 App.U.S.C. § 2403(b) and § 2404(c), "specifies the goods subject to export controls and the group of countries to which exports of certain products are restricted. By the use of code numbers and letters following products on the list, an exporter can determine whether a particular shipment of goods requires a validated license or not." *United States v. Moller–Butcher,* 560 F.Supp. 550, 552 (D.Mass.1983); *see* 15 C.F.R. § 399.1.

taining the mirrors and forwarded the shipment to Moscow.

In 1980, the Spawrs were indicted for misrepresenting shipment values in declarations submitted to the United States Customs Service, a violation of 18 U.S.C. § 1001 (Counts 1–6); conspiracy to export laser mirrors without a required license, a violation of 18 U.S.C. § 371 (Count 10); and exporting laser mirrors without a required license, with knowledge that they would be transshipped to the Soviet Union, a violation of export administration regulations (Counts 7–9, 11–14).[2] A fifteenth count was dismissed on the court's motion.

After a jury trial, the corporation was convicted on all charges (Counts 1–14), Walter was convicted on the conspiracy and 1977 exporting charges (Counts 10–14), and Frances was convicted on the misrepresentation, conspiracy, and 1977 exporting charges (Counts 1–6, 10–14).[3] The Spawrs appealed their convictions on four grounds: that the export regulations relied on by the government were defunct; that government misconduct prejudiced their defense; that the trial court erred by admitting co-conspirator statements lacking a proper evidentiary foundation; and that the evidence was insufficient to support their convictions. This court affirmed their convictions in *United States v. Spawr Optical Research, Inc.*, 685 F.2d 1076 (9th Cir.1982),

*cert. denied,* 461 U.S. 905, 103 S.Ct. 1875, 76 L.Ed.2d 807 (1983).

In 1985, the Spawrs collaterally attacked their convictions by filing a petition under 28 U.S.C. § 2255 requesting the district court to set aside their sentences on ten new grounds not raised at trial or on appeal. The district court denied the petition in its unpublished order filed October 9, 1986, because the Spawrs had not demonstrated that they had cause for failing to raise their issues at trial or on appeal, or that they had been prejudiced by the alleged trial defects.

The Spawrs then moved for reconsideration of the district court's order denying the § 2255 petition. They moved the district court to reconsider two of the grounds relied on in the petition: that they had ineffective assistance of counsel, and that the prosecution withheld exonerating evidence in violation of *Brady*. The Spawrs also filed an additional motion alleging another instance of prosecutorial misconduct —that the prosecution intentionally provided the court with the wrong CCL. The district court denied the Spawrs' motion in its unpublished order, filed July 21, 1987, for essentially the same reasons as its earlier denial.[4]

On appeal, the Spawrs renew the three contentions of trial error raised in their

---

**2.** Counts 7–9 relate to the 1976 exports filling the first Soviet order. They charge violation of 15 C.F.R. § 371.2, 372.1(b), 387.6, and then § 6(b) of the Export Administration Act of 1969, Pub.L. No. 91–184, 83 Stat. 841, 844 ("1969 Act") (formerly 50 App.U.S.C. § 2405(b)). Counts 11–14 relate to the 1977 exports filling the second Soviet order, which occurred after the 1969 Act had expired and before it was reenacted by Pub.L. No. 95–52, 91 Stat. 235 (1977) (superseded by the Export Administration Act of 1979, Pub.L. No. 96–72, 93 Stat. 503 ("1979 Act") (codified as amended at 50 App.U.S.C. § 2401 et seq.)). They charge, in addition to the aforementioned regulations and 15 C.F.R. § 387.1(a), violation of Exec.Order No. 11940, 3 C.F.R. § 150 (1976) (revoked by Exec.Order No. 12002, 3 C.F.R. § 133 (1977), *reprinted in* note to 50 App.U.S.C. § 2403), and § 5(b) of the Trading with the Enemy Act, ch. 106, 40 Stat. 411, 415 (1918) (codified as amended at 50 App.U.S.C. § 5(b)), which maintained the 1969 Act regulations in force until the 1969 Act could be reenacted.

**3.** The trial court sentenced the corporation to fines totalling $100,000, and placed the corporation on probation for five years. Frances was given five year suspended sentences on Counts 1–6 and 10–14, and placed on probation for a period of five years. Her sentences ran concurrently. Walter was given a five year sentence on Count 10, and ten year sentences on Counts 11–14. His sentences also ran concurrently. Walter was to serve the first six months of his sentence in custody, and the remainder of the sentence was suspended. He was put on probation for a period of five years after the expiration of his six months in custody.

**4.** Most of this background discussion is drawn from the district court's unpublished Order Denying Section 2255 Petition, at p. 1 n. 1; the district court's Order Denying Defendants' Motion for Reconsideration of Order Denying Section 2255 Motion, at pp. 1–3; and this court's opinion on direct appeal, *see Spawr*, 685 F.2d at 1078–80 & nn. 1–6.

motion to reconsider—*Brady* violations, the prosecution's knowing production of misleading evidence, and ineffective assistance of counsel. The government addresses the Spawrs' arguments and further contends that this appeal should be dismissed for lack of jurisdiction, for undue delay in filing the § 2255 motion, and for failure to assert claims at trial or on direct appeal. The district court's denial of the Spawrs' § 2255 motion is reviewed de novo. *See United States v. Quan*, 789 F.2d 711, 713 (9th Cir.1986).

## JURISDICTION

The government contends that the district court lacked jurisdiction over the Spawrs' § 2255 motion because the Spawrs are no longer in custody. We disagree.

■■■ The district court's jurisdiction over this motion is measured at the time of filing. So long as the Spawrs were in custody at that time, jurisdiction is present. *See* 16 *Federal Procedure* § 41:15 at 328–29 (1983). The district court has stated that the Spawrs were serving five year probationary terms when they filed their § 2255 motion. A probationary term is sufficient custody to confer jurisdiction. *See Wright v. United States*, 732 F.2d 1048, 1050 n. 1 (2d Cir.1984), *cert. denied*, 469 U.S. 1106, 105 S.Ct. 779, 83 L.Ed.2d 774 (1985).

Apparently the government, believing that the Spawrs were released from probation after filing, is actually making a mootness argument. The district court rejected this contention, relying primarily on Supreme Court authority, *Lane v. Williams*, 455 U.S. 624, 102 S.Ct. 1322, 71 L.Ed.2d 508 (1982); *Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); *Carafas v. LaVallee*, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968), and authority from this court, *United States v. Hearst*, 638 F.2d 1190 (9th Cir.1980), *cert. denied*, 451 U.S. 938, 101 S.Ct. 2018, 68 L.Ed.2d 325 (1981); *Courtney v. United States*, 486

F.2d 1108 (9th Cir.1973). We agree with the district court that this motion is not moot.

In *Carafas*, the Court held that, so long as the adverse consequences of a criminal conviction remain, a petition for a writ of habeas corpus is not moot, even though the petitioner's custody has expired since filing. 391 U.S. at 236–38, 88 S.Ct. at 1558–60. Shortly thereafter, in *Sibron*, the Court reached a similar result. 392 U.S. at 50–58, 88 S.Ct. at 1896–1900. In *Lane*, the Court found the petition at issue to be moot. However, it did so on the ground that the petitioner, who was no longer in custody, had challenged only the sentence. The Court, citing *Carafas* and *Sibron*, emphasized that the petition would not have been moot if the petitioner had challenged the conviction itself.[5] 455 U.S. at 630–33, 102 S.Ct. at 1326–28.

The Spawrs have raised a number of challenges to their convictions (e.g. ineffective assistance of counsel). Thus, the distinction identified in *Lane* is not an obstacle to the remedy sought in this case. Moreover, it is evident that collateral consequences of the Spawrs' convictions still remain. For example, as the district court and the Spawrs have noted, the Spawrs are unable to receive government contracts until 1991. It may also be true that direct consequences of the convictions remain—the Spawrs claim that their corporation has not completed payment of its fine, and that their probation terms have not expired (the government has stated otherwise). As a result, this § 2255 motion is still viable under *Carafas* and *Sibron*.

As a final matter, the government requests this court to dismiss the motion because of the Spawrs' delay in filing. Rule 9 of the Rules Governing § 2255 Proceedings provides:

> *(a) Delayed motions.* A motion for relief made pursuant to these rules may be dismissed if it appears that the government has been prejudiced in its

---

5. These Supreme Court decisions involved petitions for habeas corpus and not § 2255 motions. Nevertheless, this court's decisions in *Hearst*, 638 F.2d at 1192 n. 1, and *Courtney*, 486 F.2d at 1109 n. 1, clearly establish that *Carafas* and its progeny apply with equal force to § 2255 motions.

ability to respond to the motion by delay in its filing unless the movant shows that it is based on grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the government occurred.

However, it should be emphasized that the government must first make a showing of prejudice. *See* 16 *Federal Procedure* § 41:507 at 594 (1983). Beyond its request for dismissal due to delay, the government makes no showing or prejudice. Therefore, its request is denied.

## PROCEDURAL DEFAULT

The government also contends that the Spawrs' § 2255 motion should be dismissed because the issues presented were not raised at trial or on direct appeal. It maintains that under *United States v. Frady,* 456 U.S. 152, 167, 102 S.Ct. 1584, 1594, 71 L.Ed.2d 816 (1982), the Spawrs must show "cause" to excuse their procedural default, and "actual prejudice" from the alleged trial errors. The government claims that the Spawrs have done neither.

In *Sunal v. Large,* 332 U.S. 174, 67 S.Ct. 1588, 91 L.Ed. 1982 (1947), the Supreme Court capsulated the law concerning the availability of habeas relief in the face of such procedural defaults. The Court first stated the general rule that "the writ of habeas corpus will not be allowed to do service for an appeal." *Id.* at 178, 67 S.Ct. at 1590. The Court then acknowledged an exception for errors of constitutional magnitude as opposed to mere errors of law and procedure. *Id.* at 178–79, 67 S.Ct. at 1590–91. However, the Court limited this "constitutional" exception to exceptional circumstances for which no reasonable alternative to habeas existed for their correction. *Id.* at 179–80, 183–84, 67 S.Ct. at 1591–92, 1593–94.

Years after § 2255 was enacted, the Court decided *Kaufman v. United States,* 394 U.S. 217, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969). In *Kaufman,* the Court generally reaffirmed the principles set out in *Sunal.* But it stated that constitutional claims should not be denied solely because they should have been raised on appeal. *Id.* at 223–24, 89 S.Ct. at 1072–73. Whereas the Court imposed no requirement on petitioners to show cause and prejudice, it implied that constitutional claims should not be decided when direct appeal procedures were deliberately bypassed. *Id.* at 220 n. 3, 89 S.Ct. at 1070 n. 3.

In *Davis v. United States,* 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973), the Court once again affirmed the foregoing principles with one exception. It distinguished *Kaufman* and carved out a class of constitutional claims that would not be so readily decided initially on a § 2255 motion. These claims are those that run afoul of express waiver provisions such as Fed.R. of Crim.P. 12(b)(2) (objections to indictment waived unless raised by motion before trial). The *Davis* court restricted the judicial discretion to be exercised in these § 2255 cases by requiring the petitioner to show "cause and prejudice." 411 U.S. at 243–45, 93 S.Ct. at 1583–84.

This same standard was applied to a claim that ran afoul of Fed.R. of Crim.P. 30 (objections to jury charge waived unless raised before jury retires). *See Frady,* 456 U.S. at 167–68, 102 S.Ct. at 1594–95. In reaffirming *Davis,* the *Frady* Court did not expressly overrule *Kaufman* (nor did it have reason to). The Court has not modified its position further.

In this case, each of the Spawrs' claims is constitutionally based, either on the Fifth or Sixth Amendment. Thus, the general rule that claims cannot be raised initially in a § 2255 motion is inapplicable. The question becomes whether these claims fall under the "cause and prejudice" rule of *Davis* and *Frady.*

 We find that we need not resolve this question. Assuming that "cause and prejudice" are not threshold barriers to the Spawrs' motion by virtue of *Davis* and *Frady,* showings of materiality or prejudice are nonetheless required before relief can be granted on claims of prosecutorial misconduct and ineffective assistance of

counsel.[6] As we discuss below, the Spawrs are unable to meet even the slightest burden of showing the materiality of the alleged trial defects, or the prejudice caused thereby, because the issue to which each of their claims relate was not a disputable issue in their criminal trial.

## MATERIALITY

The first of the Spawrs' claims is based on the government's duty to disclose to the defense material evidence of an exculpatory nature. *See Brady v. Maryland,* 373 U.S. 83 at 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963). The Spawrs contend that the government knowingly suppressed testimony of a laser mirror expert and an Air Force Colonel. They argue that had this testimony not been suppressed, it "would have established that the mirrors exported by the Spawrs were not on the Commodity Control List and did not require an export license."

The second claim is based on another allegation of prosecutorial misconduct. The Spawrs assert that during the course of the trial, the government knowingly provided the court with an incorrect CCL. Had the correct version been provided, they maintain, the court would have instructed the jury differently as to the presence of the Spawrs' mirrors on the CCL.

The third and last claim alleges ineffective assistance of counsel. The record clearly reveals that the Spawrs' entire dissatisfaction with counsel relates to the licensing issue. The Spawrs argue that counsel failed to secure relevant expert testimony on the question of whether their mirrors were included on the CCL, and that counsel failed to detect the recurring instances of prosecutorial misconduct.

These three claims relate entirely to a single issue: whether the Spawrs' mirrors were included on the CCL and therefore required an export license. The claims can only be material if this licensing issue was in controversy during trial. If the issue was not in controversy, the Spawrs would hardly be entitled to relief based on the prosecutor's misconduct regarding evidence probative of that issue, or defense counsel's failure to detect such misconduct.

■ In its denial of this § 2255 motion, the district court held that the Spawrs' claims were not material because the question of whether the Spawrs' mirrors were included on the CCL was not a triable issue. It stated that the executive branch, rather than a jury, is empowered to determine which commodities require export licenses; and in this case, the Secretary had determined that the Spawrs' mirrors were subject to the license requirement. The Spawrs now vigorously contest the district court's holding.

The Spawrs do not challenge the conclusion reached in *Moller–Butcher,* 560 F.Supp. at 552–54, that the Secretary has the final word, in the setting of a criminal trial, in determining which items *should be* included on the CCL at any given time. Rather, they challenge the district court's decision to defer to the Secretary's determination that their mirrors *were* included on the CCL when they applied for an export

---

**6.** In order to establish a *Brady* violation, the defense must show that the exculpatory evidence suppressed by the government was material; that is, "had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed. 2d 481 (1985) (plurality). Before the prosecution's knowing proffer of misleading evidence will result in a new trial, the materiality of that evidence must also be established. "A new trial is in order if there is any reasonable likelihood that the false [evidence] could have affected the judgment of the jury." *United States v. Polizzi,* 801 F.2d 1543, 1550 (9th Cir.1986). And prejudice is a necessary element of a claim of ineffective assistance of counsel. In most cases, the prejudice requirement can only be met if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984). The *Strickland* standard for prejudice has been considered to impose virtually the same burden on the defense as the standard for materiality in *Brady* claims. *See Bagley,* 473 U.S. at 682, 105 S.Ct. at 3383–84. The burden on the defense in claims of knowing production of false evidence, however, is less imposing, akin to the harmless error standard which requires the government to show immateriality. *See Bagley,* 473 U.S. at 679–80 n. 9, 105 S.Ct. at 3382 n. 9.

license. They maintain that this latter determination impacts on an element of the charged offenses; and therefore, due process and the right to a trial by jury preclude deference to the Secretary. As a consequence, the Spawrs argue that a jury (or perhaps a judge) should be permitted to evaluate the evidence and reach a conclusion contrary to that of the Secretary. We disagree.

It is beyond dispute that the export of commodities is a major component in the economic condition of the United States. In addition, the export of certain commodities may have a significant impact on United States' foreign policy and national security. *See* 50 App.U.S.C. § 2402. The enactment of the 1969 Act, and later the 1979 Act, as well as the promulgation thereunder of a complex scheme of regulations, is a testament to the important and sensitive nature of the export function.

In this context, we cannot construe the 1969 Act or its regulations to accommodate judicial factfinding on intricate licensing questions. Congress has designated the Secretary as the coordinating official in the area of export administration. It would severely undermine the Secretary's authority if judges and juries in individual criminal proceedings were permitted to reverse licensing determinations. And it would convert the judicial system into a policy-making forum, one in which the judiciary possess significantly less expertise and resources than the Secretary. Congress did not intend this chaotic and potentially dangerous result.

This is evident in Congress' decision to exempt the Secretary's determinations under the 1969 Act from the judicial review provisions of the Administrative Procedure Act. *See* § 8, 1969 Act (current version codified at 50 App.U.S.C. § 2412(a)); *see also* § 13(e), 1979 Act (added by amendment, Pub.L. No. 99–64, § 114, 99 Stat. 120, 151–52 (1985), codified at 50 App.U.S.C. § 2412(e)) ("The Secretary's written [license denial] shall be final and is not subject to judicial review."). It is also evident in the language of the two statutory provisions which the exporting counts charged the Spawrs with violating. *See* Former 50 App.U.S.C. § 2405(b) (relative to the 1976 exports), and 50 App.U.S.C. § 5(b) (relative to the 1977 exports). These provisions make it a crime to violate not only the particular statute or its regulations, but also any license or order issued thereunder. Thus, when the Secretary has issued a license or order, the factfinder is instructed to accept it as law, without considering its advisability.

In this case, the Secretary has determined that the Spawrs' mirrors could not be exported without an export license. Right or wrong, the trial court must accept this determination as a matter of law. The government need not establish independently at trial, as an element of the charged offenses beyond a reasonable doubt, that the Spawrs' mirrors were included on the CCL and therefore subject to the licensing requirement. Because the licensing issue was not an element of the charged offenses, the Spawrs are not denied due process or the right to a jury trial by deference to the Secretary's determination. Rather, given the Secretary's determination, the prosecution must prove only that the Spawrs exported their mirrors without the necessary license and with the appropriate mental state.

At trial, the district court admitted some government testimony and instructed the jury on matters relating to the licensing issue. It is therefore arguable that the district court originally considered this a triable issue. However, because we hold that the need for an export license had already been established conclusively by the Secretary, it was harmless to place this issue before the jury.

### CONCLUSION

In the absence of any controversy surrounding this issue, the Spawrs' dependent claims of prosecutorial misconduct and ineffective assistance of counsel are immaterial and non-prejudicial.

Accordingly, the district court's judgment denying the Spawrs' § 2255 motion is affirmed.

AFFIRMED.

PREGERSON, Circuit Judge, dissenting:

I agree with the majority that the Secretary of Commerce's decision to place a commodity on the Commodity Control List ("CCL") is not subject to judicial review. I disagree, however, with the unwarranted conclusion that the majority draws from this initial proposition, to wit: that at a criminal trial the Secretary's factual determination that a commodity had been placed on the CCL is conclusive and thus is not a question for the jury to determine. The authorities cited by the majority support the initial proposition, but not the conclusion drawn from it.

The majority cites two statutory grounds for its reading of the Act. First, Congress exempted the Secretary's decision to place a commodity on the CCL from the judicial review provisions of the Administrative Procedure Act ("APA"). *See* § 8, Export Administration Act of 1969, *reprinted in* U.S.CODE CONG. & ADMIN.NEWS 943 (current version codified at 50 App.U.S.C. § 2412(a)) (excluding the functions exercised under the Export Administration Act from the operation of the APA's judicial review provisions, 5 U.S.C. §§ 701–706). Section 704 of the APA provides for judicial review of *agency action.* The Spawrs are not challenging the Secretary's initial decision to place their commodity on the CCL. What the Spawrs are challenging at their criminal trial is whether their product meets the description of an item previously placed on the CCL by the Secretary.

Second, two of the statutory provisions under which the Spawrs are charged make it a crime to violate any license or order issued by the Secretary. *See* Former 50 App.U.S.C. § 2405(b) and 50 App.U.S.C. § 5(b). Again, these provisions address actions by the Secretary (i.e., placing commodities on the CCL or issuing or refusing to issue an export license) occurring before an alleged criminal violation of the Act occurred. These provisions offer no support for the majority's position that in a criminal trial the factfinder is precluded from determining whether a commodity was in fact listed on the CCL at the time of the alleged criminal violation.

The majority's reliance on *United States v. Moller–Butcher,* 560 F.Supp. 550 (D.Mass.1983) is similarly misplaced. The district court in *Moller–Butcher* makes clear the distinction between judicial review of (1) whether the Secretary actually did place a commodity on the CCL—a question of fact—and (2) whether the Secretary should have placed a commodity on the list—a question of advisability:

Defendants contend that the grand jury must allege and the government must prove not only that the particular goods that defendants are accused of exporting without a license are listed on the CCL, but also that they fall within the category of goods which make a significant contribution to another country.

*Moller–Butcher,* 560 F.Supp. at 552. In making this distinction, the district court in *Moller–Butcher,* contrary to the majority's position, appears to assume that the first question, whether particular commodities are on the CCL, *is* a question for the jury. In any event, the holding in *Moller–Butcher* goes to whether the Secretary "has the ultimate authority to decide which goods are included on the list and how they are classified," *id.,* and not whether the goods were in fact on the CCL.

The majority concludes that "when the Secretary *has* issued a license or order, the factfinder is instructed to accept it as law, without considering its advisability." Majority opinion at page 1473 (emphasis added). Assuming arguendo that this conclusion is a correct reading of the Act, it still does not follow that at a criminal trial the Secretary's determination that a commodity had been placed on the CCL must, as a matter of law, be accepted by the jury. Placing this question before the jury does not challenge the *advisability* of the Secretary's initial decision to list a commodity on the CCL. Therefore, requiring the government to prove at a criminal trial that the Spawrs' laser mirror was on the CCL at the relevant time would not "undermine the Secretary's authority" because such a requirement in no way challenges the Secre-

tary's initial decision to place commodities on the CCL and to issue or refuse to issue licenses accordingly.

In addition to its lack of support in the text of the Act, in its legislative history, and in the case law interpreting it, the majority's reading of the Act also suffers from constitutional infirmities. The Fifth Amendment right to due process and the Sixth Amendment guarantee of a criminal defendant's right to trial by jury require not only that the government prove every element of a criminal offense beyond a reasonable doubt but also that each element be submitted to an impartial trier of fact. *See In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970) ("Lest there remain any doubt about the constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."); *see also Sandstrom v. Montana,* 442 U.S. 510, 521–22, 99 S.Ct. 2450, 2458, 61 L.Ed.2d 39 (1979) (conclusive presumption conflicts with the overriding presumption of innocence and would invade the factfinding function assigned solely to the jury in a criminal case) (citing *Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952) and *United States v. United States Gypsum Co.,* 438 U.S. 422, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978)). Whether the laser mirrors exported by the Spawrs were in fact on the CCL at the time they were exported is an essential element of the offenses allegedly committed by them. It was for the jury, not the Secretary of Commerce, to determine whether the Spawrs' laser mirrors were in fact an item listed on the CCL.

Accordingly, I respectfully dissent.