**UNITED STATES of America**

v.

**Ahmad MODARRESSI, Majid Modarressi.**

**Crim. No. 88–014–WF.**

United States District Court, D. Massachusetts.

May 17, 1988.

Thomas J. Ford, Peter J. Muse, Boston, Mass., for defendants.

## MEMORANDUM AND ORDER

WOLF, District Judge.

As indicated at the May 13, 1988, hearing, for the reasons described below, defendants' motion for discovery of technical data and related information relevant to whether the items at issue in this case

could not be exported to Iran without a license is allowed. Defendants' motion for discovery concerning the policy and practice of the United States regarding authorization of arms sales to Iran is, however, denied.

### 1. *The Technical Data*

Defendants in this case are charged with conspiring to violate, and violating, the Arms Export Control Act, 22 U.S.C. § 2778, by seeking to obtain and deliver to Iran certain defense items without an export license. The items in question are pulsed twystron tubes (model VA–145E), which the second superseding indictment, dated May 5, 1988, alleges is a component of the AN/TPS–43 Mobile Radar System, and the CW Klystron amplifier (model VA 868), which is alleged to be a component of an integral part of the Hawk Missile System.

The parties agree that the question whether the tubes involved in this case are defense items designated under the United States Munitions List, and are therefore subject to the export license requirement, is a question of fact for the jury at trial. This may be a disputed fact. The tubes in question are not designated specifically by name as being on the United States Munitions List. Rather, the United States Munitions List describes covered items generically. The superseding indictment alleges that the pulsed twystron tube is covered under Category XI of the United States Munitions List as a specially designed or modified component, part, accessory and attachment for electronic equipment assigned a military designation. 22 C.F.R. § 121.1, Category XI(a)(1) and (2). The superseding indictment also alleges that the CW Klystron amplifier is covered under Categories XII and IV of the United States Munitions List as a specifically designed or modified component, part, accessory and attachment for fire control and missile systems and as equipment associated with such systems. 22 C.F.R. § 121.1 Categories XII(a) and (c), and IV(h).

Defendants have recently requested discovery of technical data concerning the tubes in question and documents indicating whether the government has ever determined that the tubes are on the United States Munitions List. Defendants point out that 21 C.F.R. § 120.3, which pertains to the policy on designating defense articles, provides in part that:

> Designations of defense articles ... are based primarily on whether an article ... is deemed inherently military in character. Whether it has a predominantly military application is taken into account. The fact that an article ... may be used for both military and civilian purposes does not in and of itself determine whether it is subject to the export controls of this chapter.... The intended use of the article or service after its export (i.e. for military or civilian purpose) is also not relevant in determining whether the export is subject to the controls of this subchapter.

Thus, defendants assert that the requested discovery is important to their ability to ascertain and argue whether the tubes were indeed included on the United States Munitions List and subject to export controls.

The government opposes this discovery request as untimely because it was not filed within the period for motions established by the Magistrate. The government also contends that the motion is unnecessary. The government has provided defendants with the requested technical information to the extent that it is in the U.S. Attorney's possession. The government has also furnished defendants written statements of its expert witnesses and arranged for defense counsel to interview those witnesses.

The government has not claimed that the documents defendants request are classified or that their production would injure national security. At a hearing on May 13, 1988, the government stated that it did not believe it would be harmful or difficult for the government to furnish the requested discovery promptly if ordered to do so.

■ The court has concluded that there was cause for defendants' failure to file this discovery motion within the time estab-

lished by the Magistrate. *See* F.R.Crim.P. 12(f). This case involves an esoteric area in which defendants have had to obtain expert advice. Moreover, the recent superseding indictment alters the categories of the United States Munitions List alleged to include the tubes in question. This alteration heightens the need of the defendants to assess independently whether the tubes are on the list at all. Thus, the court has considered the merits of the request.

■ The court concludes that while it is commendable that the government has informally furnished certain technical information to defendants, it is insufficient. The information defendants seek is relevant and possibly important. There are, apparently, no countervailing considerations militating against disclosure. Thus, the court will order the government to produce promptly all technical data concerning the tubes in question and all documents relating to whether the government has ever determined that those tubes are on the United States Munitions List.

### 2. *Other Arms Sales to Iran*

Defendants have made another discovery request for documents concerning the United States policy and practice regarding arms sales to Iran. This request is denied.

The first superseding indictment, returned on February 18, 1988, alleged in paragraph 4 that:

It is, and has been since November, 1979, the policy and practice of the Department of State, Office of Munitions Control (OMC), as a function of the foreign policy of the United States, to deny any application for license to export, or request to transfer, U.S. Munitions list articles to the Islamic Republic of Iran.

Defendants asked the Magistrate to order the government to produce all documents relating to whether the United States consistently adhered to the policy alleged in paragraph 4, expressing particular interest in documents concerning the highly publicized so-called "Iran–Contra" arms sales. The defendants also moved to have paragraph 4 struck from the indictment as surplusage.

The government responded by taking the anomalous position of asserting that the allegations of paragraph 4 were relevant, and therefore should not be struck, but that the discovery request relating to that paragraph should be denied because "it is unsupported by any showing of materiality." The Magistrate denied the discovery request and did not allow the motion to strike. Defendants appealed the denial of discovery.

■ As stated at the initial conference in this matter, the court believes that if the allegation that it has been the policy and practice of the United States not to authorize arms sales to Iran were really relevant to the charges in this case, it would be appropriate to grant defendants request for discovery of documents concerning sales to Iran—including the presumably sensitive "Iran–Contra" documents. However, on May 5, 1988, the second superseding indictment was returned. It deletes the former paragraph 4 and does not include any allegations regarding the government's policies or practices regarding sales to Iran. Thus, the primary basis for the discovery request has now disappeared.[1]

Defendants do, however, have several secondary bases for their discovery request. Each is without merit.

Defendants suggest that their activities may fall within an exception to the licens-

---

**1.** As another judge of this court has recently observed, while there is a wide-degree of prosecutorial discretion in framing indictments, it is important that the government recognize that expansive allegations often entail duties of disclosure of equal proportions. *See, United States v. Lavasseur,* —— U.S. ——, Cr. No. 86–180–Y slip op. (D.Mass. May 4, 1987). It is definitely in the interest of the administration of justice that the implications for discovery of particular allegations be considered carefully by the government before an indictment is presented to the grand jury. It is also in the interests of the government to do so, because the prosecution may not always have the opportunity presented in this case to avoid difficult or damaging discovery orders by revising its initial decision concerning the content of an indictment and obtaining a superseding indictment.

ing requirements of the Arms Control Export Act, such as for exports made for the government or as part of a foreign assistance program. *See* 22 U.S.C. § 2778(b)(2) and 22 C.F.R. §§ 126.4 and 126.6. These exceptions are applicable, however, only in specific, narrow circumstances. They require, among other things, that a transaction be effected solely by a United States government agency (§ 126.4) or that an article be transferred by the Department of Defense to a representative of a foreign government in the United States (§ 126.6). *United States v. Durrani*, 835 F.2d 410, 418–19 (2d Cir.1987). Defendants do not suggest how either of these exceptions might be applicable to them. Nor, more importantly, do they indicate why discovery concerning other arms sales is relevant to whether the transaction alleged in this case is subject to an exception.

■ In addition, defendants claim that they should have discovery concerning the government's policy and practice regarding arms sales to Iran because they assert it is unfair to prosecute them for activities engaged in or sanctioned by the government. Indeed, they assert that for the government to investigate them while simultaneously encouraging weapons merchants to negotiate arms deals with Iran would constitute outrageous government conduct, meriting dismissal of the charges against them. These related claims, however, ignore certain relevant realities.

The Arms Export Control Act establishes standards and procedures to permit the government to make considered judgments whether to allow certain arms sales. It is irrelevant to this case whether established procedures have operated to authorize some arms sales to Iran, or whether the President of the United States has sought to authorize such sales specially. Defendants do not suggest that they sought or obtained any official approval for their alleged acts. It is neither inherently unfair nor outrageous for those who are alleged to have tried to circumvent the Arms Export Control Act to be prosecuted, when those who have complied with the Act, or otherwise obtained what they understood to be official approval for arms sales, have not been prosecuted for export control violations. *See, United States v. Evans,* 667 F.Supp. 974, 990–91 (S.D.N.Y.1987).

■ Moreover, even assuming that discovery might disclose that individuals similarly situated to defendants have not been prosecuted, the defendants have failed to make a claim of selective prosecution adequate to entitle them to discovery. As the Court of Appeals for the First Circuit has observed:

> Prosecutors have broad discretion in deciding whom to prosecute. Moreover, the courts should presume that the prosecution was pursued in good faith execution of the law. The prosecutor's discretion is limited by constitutional principles of equal protection and due process, which protect individuals from selective enforcement and prosecution. To overcome the presumption of good faith, a defendant must establish that his prosecution results from "intentional and purposeful discrimination."

The test for intentional and purposeful discrimination has been set out as follows:

> To support a defense of selective or discriminatory prosecution, a defendant bears the heavy burden of establishing, at least *prima facie*, (1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights.

> To obtain an evidentiary hearing, the defendant has a lesser burden and need allege only "some facts (a) tending to show that he has been selectively prosecuted and (b) raising a reasonable doubt about the propriety of the prosecution's purpose." If the prosecutor presents "countervailing reasons" to justify the prosecution, the district court may refuse

to grant an evidentiary hearing. (Citations omitted).

*United States v. Bassford,* 812 F.2d 16, 19 (1st Cir.1987). In this case, defendants have not alleged facts sufficient to justify the onerous and intrusive discovery they request regarding United States policies and practices concerning arms sales to Iran. The request for such discovery will, therefore, be denied.

3. *Order*

Accordingly, it is hereby ORDERED that:

1. Defendants' motion for discovery of documents relating to the United States' policy and practices concerning the sale of arms to Iran is DENIED.

2. The government shall by May 20, 1988, produce all documents in its possession, custody, or control which:

a. Constitute plans, specifications, data sheets, wiring diagrams and other technical data concerning the VA–145–E pulsed twystron tubes referred to in the superseding indictment dated May 5, 1988;

b. Constitute plans, specifications, data sheets, wiring diagrams and other technical data concerning the VA–868 CW Klystron amplifier tubes referred to in the superseding indictment dated May 5, 1988; or

c. Relate to whether the State Department (or any other government agency) has ever determined that the above items are on the United States Munitions List.

As discussed at the May 13, 1988 hearing, if it is not possible for the United States to comply fully with this order by May 20, 1988, the parties shall attempt to agree upon a schedule for production consistent with the intended trial of this case in early June, 1988. Only intractable disputes should be referred to the court for resolution.

## MEMORANDUM AND ORDER

■ Defendants have moved to suppress the recordings of a meeting between them and a government undercover agent which occurred in defendant Ahmad Modarressi's room at the Embassy Suites Hotel on January 14, 1988. Defendants base their motion on the fact that no warrant was obtained to authorize the installation of audio or visual recording devices in Ahmad Modarressi's hotel room.

The government acknowledges that this case is factually indistinguishable from *United States v. Padilla,* 520 F.2d 526 (1st Cir.1975). In *Padilla* the Court of Appeals for the First Circuit decided that a warrant is required for the installation of electronic surveillance equipment in a target's hotel room, even if it is only used to record conversations with an undercover agent. *Id.* The *Padilla* decision has, in this court's view, been cogently criticized by the Court of Appeals for the Eleventh Circuit in *United States v. Yonn,* 702 F.2d 1341, 1346–47 (11th Cir.) *cert. denied,* 464 U.S. 917, 104 S.Ct. 283, 78 L.Ed.2d 261 (1983), which reached a contrary result. Nevertheless, *Padilla* remains the law of the First Circuit. Therefore, the audio and visual recordings of the meeting at the hotel must be suppressed.

The defendants have also suggested that the undercover agent's testimony concerning the meeting at the hotel should be suppressed. The government disputes this contention. The government asserts that, "[e]ven those Supreme Court Justices most adamantly opposed to warrantless surveillance have agreed that the exclusionary rule would not extend to live testimony of a participant in an unlawfully recorded conversation." *Commonwealth v. Blood,* 400 Mass. 61, 78, 507 N.E.2d 1029 (1987), *citing Osborn v. United States,* 385 U.S. 323, 352, 87 S.Ct. 429, 439, 445, 17 L.Ed.2d 394 (1966) (Douglas, J., dissenting) and *Lopez v. United States,* 373 U.S. 427, 464–65, 83 S.Ct. 1381, 1401–02, 10 L.Ed.2d 462 (1963) (Brennan, J., dissenting).

As discussed at the May 13, 1988 hearing, the motion to suppress the testimony of the undercover agent concerning the January 14, 1988 meeting at the Embassy Suites Hotel is hereby referred to Magistrate Patti Saris for a Report and Recommendation to be developed on a schedule consistent with the trial of this case in early June, 1988. The motion to suppress

the recordings of the January 14, 1988 hotel meeting is hereby ALLOWED.