**UNITED STATES of America,**

v.

**Zhen Zhou WU, etc., Yufeng Wei, etc., Bo Li, etc., Chitron Electronics, Inc., Chitron Electronics Co., Ltd., etc., Defendants.**

Criminal No. 2008–10386–PBS.

United States District Court,
D. Massachusetts.

Nov. 20, 2009.

---

282

B. Stephanie Siegmann, John A. Capin, United States Attorney's Office, Boston, MA, for United States of America.

William J. Cintolo, Cosgrove, Eisenberg & Kiley, PC, Paul W. Johnson, Attorney at Law, Jessica Y. Mols, Donald K. Stern, Cooley Godward Kronish LLP, H. Reed Witherby, Smith & Duggan LLP, Boston, MA, George C. McMahon, Law Offices of George C. McMahon, North Quincy, MA, for Defendants.

## MEMORANDUM AND ORDER ON MOTION TO COMPEL PRODUCTION OF DOCUMENTS (# 87)

COLLINGS, United States Magistrate Judge.

The defendants are charged with offenses involving the illegal export of defense articles and Commerce controlled electronics from the United States to the Peoples' Republic of China without obtaining the necessary licenses from the Departments of State and/or Commerce. The statutory and regulatory framework which forms the basis of the accusations is set forth in the Second Superseding Indictment as follows:

III. The Export of Defense Articles

13. The export from the United States of arms, munitions, weapons, equipment for military use and related components, and the technology to design, build and test such items ("defense articles and defense services"), is strictly controlled and regulated under federal law.

14. The Arms Export Control Act, Title 22, United States Code, Section 2778 et seq., authorizes the President of the United States to control the import and export of defense articles and defense services in furtherance of world peace, national security, and the foreign policy of the United States and to establish and maintain a United States Munitions List for that purpose. The President has delegated the authority to regulate the export of defense articles and defense services to the Secretary of State.

15. The United States Munitions List is a catalog of designated defense articles and defense services that are subject to export restrictions. Included on the United States Munitions List are military electronics used in radar systems (including missile guidance systems), electronic combat equipment, satellite communications and navigation, and communication systems.

\* \* \*

20. Any person who intends to export from the United States any article or service on the United States Munitions List is first required to obtain a license from the U.S. Department of State.

\* \* \*

## IV. The Export of Commerce Controlled Goods

23. In general, except for items exclusively controlled for export and re-export by the Department of State, all items made, wholly or in part, in the United States, wherever located, are subject to the Export Administration Regulations, Title 15, Code of Federal Regulations, Parts 730–774. The Department of Commerce promulgates the Export Administration Regulations and maintains the Commodity Control List, which specifies the goods and technologies that require export licenses prior to shipment outside of the United States.

24. The Export Administration Regulations place limitations on the export of those goods and technology that the Secretary of Commerce deems could make a significant contribution to the military potential of other countries, could prove detrimental to the national security of the United States, or are contrary to the foreign policy of the United States. For instance, the Export Administration Regulations control exports and re-exports of "dual-use items," that is, commercial items that also have a military or nuclear proliferation application, to foreign countries. With limited exceptions, the Export Administration Regulations prohibit any person from exporting or causing the exportation from the United States of dual-use items designated as Export Classification Control Number 3A001, which are controlled for national security reasons, to China, without having first obtained an export license from the U.S. Department of Commerce.

Second Superseding Indictment (# 82) at pp. 5–9.

The United States Munitions List is found at 22 C.F.R. § 121.1.

Presently *sub judice* is the defendants' Motion to Compel Production of Documents (# 87). The Motion is divided into five parts. Parts 1 through 4 have been resolved. In Part 5, as specified at the hearing before me on November 17, 2009, the defendants seek all documents in the Government's possession which form the basis for the assertion that the various objects which the defendants are accused of unlawfully exporting fall into the prohibited categories which are set forth in the regulations.

It is important to note that the defendants are not challenging the decision to place the various categories of objects in the regulations and to prohibit their export from the United States without a license. This distinguishes the instant case from the case of *United States v. Moller–Butcher*, 560 F.Supp. 550 (D.Mass., 1983) (cited by the United States) in which the defendants were challenging whether certain items should have been placed on the list at all because they did not "make a significant contribution to the military potential of any other country," a requirement for placement on the prohibited list. *See also United States v. Martinez*, 904 F.2d 601, 602 (11 Cir., 1990) ("The question whether a particular item should have been placed on the Munitions List possesses nearly every trait that the Supreme Court has enumerated traditionally renders a question 'political.'") (citing *Baker v. Carr*, 369 U.S. 186, 217, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962)). So it appears beyond peradventure that the defendants cannot challenge the placement of certain items or category of items in the list.

The defendants acknowledge this and insist that they are seeking discovery of documents which are relevant to the issue of whether the particular items they are accused of exporting fall within a particular category of prohibited items contained

in the regulations. This is a different question. Thus, to take an example from The United States Munitions List, 22 C.F.R. § 121.1, Category XI (b) lists:

Electronic systems or equipment specifically designed, modified, or configured for intelligence, security, or military purposes for use in search, reconnaissance, collection, monitoring, direction-finding, display, analysis and production of information from electromagnetic spectrum and electronic systems or equipment designed or modified to counteract electronic surveillance or monitoring.

The defendants do not contend that they can challenge the placement of this category of objects on the list; they do contend that they have the right to discover materials which bear on the question of whether what they are alleged to have exported illegally falls within this category.

However, statutory law and holdings in the case law render the defendants' contention incorrect. Starting with the statutory law, Title 22 U.S.C. § 2778(h) prohibits judicial review of "[t]he designation by the President [or his designee] in regulations ... of items as defense articles or defense services" in The United States Munitions List. From the text of the statute, it is manifest that it prohibits review of the placement of certain items on the list "in regulations." As interpreted in the cases, the statute also precludes review of a determination by the President or his designee that a certain item falls within a category of items on The United States Munitions List. *Karn v. U.S. Department of State*, 925 F.Supp. 1, 6–7 (D.D.C., 1996), *remanded on other grounds*, 107 F.3d 923 (D.C.Cir., 1997).

A case directly on point is *United States v. Spawr Optical Research, Inc.*, 864 F.2d 1467 (9 Cir., 1988) *cert. denied*, 493 U.S. 809, 110 S.Ct. 51, 107 L.Ed.2d 20, *rehearing denied*, 493 U.S. 984, 110 S.Ct. 521, 107

L.Ed.2d 522 (1989). The case involved a criminal prosecution against the defendants for exporting laser mirrors without an export license. The Secretary of Commerce had determined that the laser mirrors were included on the Commodities Control List ("CCL"); the defendants exported them anyway. After conviction, they claimed that the prosecutor had withheld evidence that the laser mirrors " '... were not on the Commodity Control List and did not require an export license.' " *Spawr Optical*, 864 F.2d at 1472. They did

... not challenge the conclusion reached in *Moller–Butcher*, 560 F.Supp. at 552–54, that the Secretary has the final word, in the setting of a criminal trial, in determining which items *should* be included on the CCL at any given time. Rather, they challenge the district court's decision to defer to the Secretary's determination that their mirrors were included on the CCL when they applied for an export license.

*Spawr Optical*, 864 F.2d at 1472–3. (Emphasis in original).

The Ninth Circuit rejected the defendants arguments, writing:

In this case, the Secretary has determined that the Spawrs' mirrors could not be exported without an export license. Right or wrong, the trial court must accept this determination as a matter of law. The government need not establish independently at trial, as an element of the charged offenses beyond a reasonable doubt, that the Spawrs' mirrors were included on the CCL and therefore subject to the licensing requirement. Because the licensing issue was not an element of the charged offenses, the Spawrs are not denied due process or the right to a jury trial by deference to the Secretary's determination. Rather, given the Secretary's de-

termination, the prosecution must prove only that the Spawrs exported their mirrors without the necessary license and with the appropriate mental state. *Spawr Optical,* 864 F.2d at 1473.

The only distinction between the *Spawr Optical* case and the instant case is that the Secretary of Commerce had made the determination that the laser mirrors were on the CCL before they were exported and, according to the parties, the determinations with respect to the items the defendants in the instant case are charged with illegally exporting were made after the export. However, the Court sees that this distinction does not mean that the law as set forth in the *Spawr Optical* case is not equally applicable to the instant case.

As the Ninth Circuit states in the *Spawr Optical* case, if the Secretary has determined that an item is on the list, "the prosecution must prove only that the [defendants] exported their mirrors without the necessary license and with the appropriate mental state." *Spawr Optical,* 864 F.2d at 1473. The "appropriate mental state" has been set forth by the First Circuit. In the case of *United States v. Murphy,* 852 F.2d 1 (1 Cir., 1988), *cert. denied,* 489 U.S. 1022, 109 S.Ct. 1145, 103 L.Ed.2d 205 (1989) the Court wrote that all the Government must prove is that the defendants acted willfully, and "willfulness means that 'defendant must know that his conduct in exporting from the United States articles proscribed by the statute is violative of the law.' In other words, the 'government must prove that the defendant voluntarily and intentionally violated a known legal duty not to export the proscribed articles.' " *Id.* at 7 (quoting *United States v. Lizarraga–Lizarraga,* 541 F.2d 826, 828–9 (9 Cir., 1976)).

■ Thus, the Government need not prove that the defendants knew that the items which were exported were on the list; rather, the Government must prove that the defendants knew that their actions in exporting them without a license was illegal. *Murphy,* 852 F.2d at 7 & n. 6. This requirement of willfulness "protects the innocent exporter who might accidentally and unknowingly export a proscribed component or part whose military use might not be apparent." *United States v. Lee,* 183 F.3d 1029, 1032–3 (9 Cir.), *cert. denied sub nom., Lee v. United States,* 528 U.S. 990, 120 S.Ct. 454, 145 L.Ed.2d 370 (1999) and *Ray v. United States,* 528 U.S. 1128, 120 S.Ct. 963, 145 L.Ed.2d 835 (2000).

For these reasons, the Court rules that the defendants at trial may not challenge the Secretary's determination that the items were either on The United States Munitions List or the CCL. Thus, the information they seek in discovery is not "material" to their defense, *see* Rule 16(a)(1)(E)(i), Fed.R.Crim.P. and *United States v. Mandel,* 914 F.2d 1215, 1219–1223 (9 Cir., 1990). Therefore, defendants' Motion to Compel Production of Documents (# 87) will be denied.

However, before concluding, it is necessary to discuss two cases which defendants claim support their position. The first is the case of *United States v. Modarressi,* 690 F.Supp. 87 (D.Mass., 1988). That case involved a charge that the defendant exported an item, twystron tubes, on The United States Munitions List without a license. *Id.* at 89. The defendants " . . . requested discovery of technical data concerning the tubes in question and documents indicating whether the government has ever determined that the tubes are on the United States Munitions List." *Modarressi,* 690 F.Supp. at 89. Judge Wolf allowed the motions. It does not appear that the Government in that case argued that the requested data was not "material" but further, it appears that the defendants

in the instant case have already been provided with what was requested in the *Modarressi* case. The Government avers that it has provided all the documents containing the manufacturers' specifications for each of the items in question and certifications by the appropriate officials that the items were on one of the two lists. But aside from that, if the *Modarressi* case can be said to hold that the defendants in this case are entitled to the discovery they seek, the Court is of the view that the holding is erroneous because it is in conflict with the *Spawr Optical* lines of cases which were either not brought to Judge Wolf's attention or, if they were, were not discussed by him in his opinion.

The second is *dicta* in the recent Seventh Circuit case of *United States v. Pulungan*, 569 F.3d 326 (7 Cir., 2009). The Court reversed a conviction under 22 U.S.C. § 2778 holding that the Government had not offered sufficient evidence that the defendant acted willfully. The case involved a charge of illegally exporting a certain riflescope without a license. Listed on The United States Munitions List are " '[r]iflescopes manufactured to military specifications.' " *Pulungan*, 569 F.3d at 327 (quoting 22 C.F.R. § 121.1 Category 1(f)). At trial, the prosecution offered testimony that the President's designee ("the Directorate") " . . . concluded that the [particular riflescope] is 'manufactured to military specifications'—but he would not say what those specifications are or why the Directorate believes that [the particular riflescope] is 'manufactured to' them [and][t]he decision itself was not produced." *Id.*

On this record, the Court said in *dicta*[1] that "[t]he Directorate's claim of authority

to classify any item as a 'defense article,' without revealing the basis of the decision and without allowing any inquiry by the jury, would create serious constitutional problems." *Id.* at 328. The Court went on to assert that it was the obligation of the Government to prove (other than by a statement of the Directorate) that the riflescope was "manufactured to military specifications," *Pulungan*, 569 F.3d at 328, and that the defendant " . . . cannot be convicted unless he *knew* . . . " that the riflescope was a "defense article," i.e., "manufactured to military specifications" and that a license was required to export them. *Id.* at 329 (Emphasis in original).

The Court declines to follow this *dicta* in the *Pulungan* case. First, the opinion fails to cite or deal with the *Spawr Optical* line of cases. Second, to the extent that it suggests that the Government, in order to obtain a conviction, must prove that the defendant knew that the articles which were exported were "on the list," it is contrary to First Circuit law which is that the Government need not prove that the defendant knew that the item which he or she is accused of exporting is on the list. *Murphy*, 852 F.2d at 7 & n. 6.

For the aforesaid reasons, it is ORDERED that ¶¶ (1) through (4) of the Motion to Compel Production of Documents (# 87) be, and the same hereby are, DENIED as *moot* and that ¶ (5) of the Motion to Compel Production of Documents (# 87), as limned at the hearing, be DENIED.

---

1. This part of the opinion is *dicta* because the conviction was not reversed on this ground but rather on the ground that the Government had not proved that the defendant knew that a license was necessary to export the riflescope. "Pulangen is entitled to prevail even if the criminal-justice system must proceed on the assumption that the . . . riflescope is a 'defense article.' " *Pulungan*, 569 F.3d at 329.